# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| SAAC INVESTMENTS, LLC d/b/a ) <br> CHARLIE GITTO'S FROM THE HILL, ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> SECURA INSURANCE, ) <br> A MUTUAL COMPANY, ) <br> ) <br> **Defendant.** ) | No.    4:22-CV-01174-NCC |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Remand (Doc. 16).  Plaintiff filed a Memorandum in Support (Doc. 17), Defendant filed a Response (Doc. 26), and Plaintiff filed a Reply (Doc. 27).  Upon Defendant's request, the Court heard oral argument on January 25, 2023.  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 29).  For the following reasons, Plaintiff's Motion will be **GRANTED in part** and **DENIED in part** and this action will be **REMANDED** to the Circuit Court of St. Louis County, Missouri.

## I.  Background

This action arises out of a July 22, 2019 rain storm that caused severe roof damage and flooding to the restaurant Charlie Gitto's From the Hill, located at 15525 Olive Boulevard in Chesterfield, Missouri.  SAAC Investments, LLC ("SAAC") owned and operated the Charlie Gitto's restaurant.  On April 7, 2020, SAAC filed this action against Koziatek Contracting, Inc. ("Koziatek") and SECURA INSURANCE, a Mutual Company ("SECURA"), in the Circuit Court of St. Louis County, Missouri (Doc. 1-9 at 1).  SAAC served Koziatek on April 24, 2020

(*id.*; Doc. 17-6).

In its First Amended Petition filed on March 17, 2021 (Doc. 1-1), SAAC alleged that: Koziatek was negligent in repairing the roof after a hail storm in 2016, including by covering up the scupper drains, which allow excess rain water to run off of a roof on the exterior of a building, and by failing to extend and wrap the membrane securely around the parapet caps to make the roof watertight (Count I); Koziatek breached its implied warranty of roof repair to be conducted in a skillful, non-defective, and workmanlike manner (Count II); SECURA was negligent in approving Koziatek's roof repair (Count III); SECURA breached its contract by refusing to pay SAAC's proof of loss and claim, and by instructing SAAC to cease repair work pending SECURA's investigation of a subrogation claim against Koziatek, among other breaches (Count IV); and SECURA's refusal to pay was vexatious, part of an intentional, illegal scheme to pay SAAC less than it was owed (Count V).

The August 26, 2019 forensic report commissioned by SECURA concluded that:

- Blockage of the overflow scuppers on the north wall caused a significant accumulation of stormwater on the roof.  The surface height of the accumulated stormwater was higher than the various roof penetrations, which allowed water into the building.

- In addition, the weight of the water caused excessive deflection of the roof decking.  Excessive deflection of the decking caused separation of the seams of the single-ply roof membrane, which allowed water into the substrate material below the membrane.

(Doc. 17-2).  A December 18, 2019 letter from SECURA states, "This claim arises from water damage … due in large part to blocked scuppers on the roof" (Doc. 17-3).  In its November 8, 2021 answer to SAAC's First Amended Petition, SECURA admits, consistent with the forensic report, that "blockages in the overflow scuppers on the north wall caused rainwater to

2

accumulate above various roof penetrations, which allowed water into the building" and "the weight of the accumulated water caused excessive deflection of the decking and separation of the seams of the single-ply roof membrane, which also allowed water into the substrate material below the membrane" (Doc. 1-6 ¶ 39). SECURA further admits that "Koziatek performed the roofing work which led to water entering the building" (*id.*).

SAAC served written discovery on, and responded to written discovery from, Koziatek (Doc. 17 at 9).[1] SAAC asserts that the discovery served on Koziatek was less extensive than that served on SECURA because SECURA had already conducted the investigation into Koziatek's roofing work so SAAC "did not need to re-plow that path" (*id.* at 11). On March 21, 2022, SECURA was notified that SAAC retained an expert witness, Bob Frederic of Frederic Roofing, to testify at trial that Koziatek's 2016 roof repair did not meet the professional standard of care and how that roof repair directly contributed to the collapse of the roof (*id.*).

On July 12, 2022, SAAC and Koziatek engaged in a voluntary mediation session (Doc. 17 at 2, 4). Settlement negotiations continued following the mediation. On September 30, 2022, counsel for SAAC informed all parties and the court that SAAC and Koziatek had "agreed to a confidential settlement today which resolves all claims in the lawsuit involving Koziatek" (Doc. 17-4). On October 21, 2022, Koziatek filed a memorandum stating that a settlement had been reached between SAAC and Koziatek (Doc. 17-5), and SAAC voluntarily dismissed all claims against Koziatek (Counts I-II) with prejudice (Doc. 1-2). SAAC also voluntarily dismissed its

---

[1] The Court will rely on facts from SAAC's memorandum in support (Docs. 17) not disputed by SECURA's response (Doc. 26). *See Altimore v. Mount Mercy Coll.*, 420 F.3d 763, 768 (8th Cir. 2005) (removing defendant bears the burden of establishing federal jurisdiction by a preponderance of the evidence).

3

claim that SECURA was negligent in approving Koziatek's roof repair (Count III) without prejudice (Doc. 1-3).  Thus, the only remaining claims were Counts IV and V against SECURA for breach of contract and vexatious refusal to pay respectively.  SAAC asserts that the settlement and dismissals were intended to narrow the issues before the jury and focus the trial on the events that came after the roof collapse on July 22, 2019 (Doc. 17 at 9-10).

On November 4, 2022, SECURA removed the action to this Court (Doc. 1).  SAAC is a citizen of Missouri where its sole member, Charlie Gitto, Jr., is domiciled (*id.* at 4); Koziatek is a Missouri corporation with its principal place of business in Florissant, Missouri (Doc. 1-1 at 3); and SECURA is organized under the laws of the State of Wisconsin with its principal place of business in Appleton, Wisconsin (*id.*).  In its Notice of Removal, SECURA alleges that SAAC acted in bad faith in naming Koziatek to defeat diversity jurisdiction such that removal more than one year after commencement of the action is proper pursuant to 28 U.S.C. § 1446(c)(1) (Doc. 1 at 2).  SECURA alleges that SAAC did not actively litigate its case against Koziatek (*id.* at 5).

## II.  Standard

"A defendant may remove a state law claim to federal court only if the action originally could have been filed there."  *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 619 (8th Cir. 2010) (citing *Phipps v. FDIC*, 417 F.3d 1006, 1010 (8th Cir. 2005)).  The removing defendant bears the burden of establishing federal jurisdiction by a preponderance of the evidence.  *Altimore v. Mount Mercy Coll.*, 420 F.3d 763, 768 (8th Cir. 2005).  "All doubts about federal jurisdiction should be resolved in favor of remand to state court."  *In re Prempro*, 591 F.3d at 620 (citing *Wilkinson v. Shackelford*, 478 F.3d 957, 963 (8th Cir. 2007)).

When removal is predicated on diversity of citizenship, the case cannot be removed "more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). "The statute is a product of Congress' different treatment for diversity cases (as opposed to federal question cases): it is a legislative judgment that a suit governed by state law that is filed in state court should remain in state court if it has been pending and consuming state judicial resources for more than one year." *Trokey v. Great Plains Roofing & Sheet Metal, Inc.*, No. 4:16-CV-01193-ODS, 2017 WL 722607, at *1 (W.D. Mo. Feb. 23, 2017) (citation omitted). "This legislative judgment dictates that diversity cases remain in state court unless bad faith is evidenced; the one year limit is not obviated by considerations of fairness, equity, or some other basis for ascertaining what seems 'right,' but only by bad faith." *Id.* (citation omitted).

The Eighth Circuit has not yet furnished a standard for the "bad faith" exception under section 1446. *Jackson v. C.R. Bard, Inc.*, No. 4:17-CV-974 (CEJ), 2017 WL 2021087, at *2 (E.D. Mo. May 12, 2017). Both parties cite the standard set forth in *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1274-75 (D.N.M. 2014). Multiple cases from this district have followed *Aguayo*. *See Thompson v. Gen. Motors LLC*, No. 4:21-CV-00183-SEP, 2021 WL 3186587, at *3 (E.D. Mo. July 28, 2021); *E.H.S. by N. v. BNSF Ry. Co.*, No. 1:19-CV-00141-JAR, 2019 WL 3934472, at *2–3 (E.D. Mo. Aug. 20, 2019); *Bristol v. Ford Motor Co.*, No. 4:16-CV-01649-JAR, 2016 WL 6277198, at *3–4 (E.D. Mo. Oct. 27, 2016); *Jackson v. Bayer Healthcare Pharms., Inc.*, No. 4:17-CV-01413-JAR, 2017 WL 2691413, at *5 (E.D. Mo. June 22, 2017).

5

*Aguayo* sets out a two-step framework.  First, a court must determine whether the plaintiff actively litigated the claims in state court.  Failure to actively litigate is bad faith, but actively litigating creates a "rebuttable presumption of good faith."  *Aguayo*, 59 F. Supp. 3d at 1275.  Second, if the plaintiff has actively litigated, then the defendant can attempt to overcome the presumption by presenting "direct evidence that the plaintiff acted solely for the purpose of preventing … remov[al]."  *Bristol*, 2016 WL 6277198, at *4; *Aguayo*, 59 F. Supp. 3d at 1275-76.  To rebut the good faith presumption, "[t]he Court wants a smoking gun or close to it."  *Aguayo*, 59 F. Supp. 3d at 1277.

### III.  Analysis

SECURA argues that, applying *Aguayo*, SAAC acted in bad faith such that removal more than one year after commencement of the action is proper pursuant to 28 U.S.C. § 1446(c)(1) (Doc. 26 at 3-5).  The Court disagrees.  *Aguayo* adopted a "wide-open view of what constitutes active litigation."  59 F. Supp. 3d at 1275.  "A plaintiff can actively litigate claims by engaging in settlement negotiations and obtaining a settlement."  *Thompson*, 2021 WL 3186587 at *3 (citing *Bristol*, 2016 WL 6277198 at *4, and *E.H.S.*, 2019 WL 3934472 at *3).  Here, SAAC served written discovery on, and responded to written discovery from, Koziatek; retained an expert witness to testify at trial against Koziatek; and engaged in a voluntary mediation session and ultimately reached a settlement with Koziatek.  The Court finds that SAAC actively litigated its claims against Koziatek, creating a rebuttable presumption of good faith.  *See Bristol*, 2016 WL 6277198 at *4 (finding active litigation where plaintiff engaged in settlement negotiations over the course of several months culminating in a final settlement agreement, even though plaintiff failed to take discovery, depose a corporate representative, or respond to a motion for

6

summary judgment); *E.H.S.*, 2019 WL 3934472 at *3 (finding active litigation where plaintiff deposed defendant, defeated a motion for summary judgment, and engaged in settlement discussions, even though no discovery was specifically directed at defendant and plaintiff ultimately dismissed defendant after three years without a settlement agreement days before trial).

SECURA cannot rebut the presumption of good faith. SAAC has offered plausible explanations for SECURA's purported evidence of bad faith—the minimal discovery conducted as to Koziatek and the voluntary dismissal of the claims against Koziatek on the eve of trial. SAAC plausibly asserts that the discovery served on Koziatek was less extensive than that served on SECURA because SECURA had already conducted the investigation into Koziatek's roofing work so SAAC "did not need to re-plow that path" (Doc. 17 at 11). *See Bristol*, 2016 WL 6277198 at *4 (finding plaintiff provided plausible explanations for the absence of documented discovery, namely, that plaintiff had obtained discovery in a different case). SAAC further asserts that the settlement of the claims against Koziatek and dismissal of the negligence claim against SECURA were intended to narrow the issues before the jury and focus the trial on the events that came after the roof collapse on July 22, 2019 (Doc. 17 at 9-10). *See E.H.S.*, 2019 WL 3934472 at *3 (finding plaintiff gave a plausible reason for her legal strategy where plaintiff represented that defendant had been dismissed on the eve of trial for the purpose of streamlining the trial and simplifying the issues presented to the jury). Moreover, the timing in this case is not indicative of bad faith. SAAC dismissed the claims against Koziatek more than two years after commencement of the action. *Cf. Lawson v. Parker Hannifin Corp.*, No. 4:13–cv–923–O, 2014 WL 1158880, at *4–6 (N.D. Tex. Mar. 20, 2014) (holding plaintiff did not actively litigate

7

claims where plaintiff nonsuited defendant shortly after expiration of the one-year bar on removal). SECURA has failed to provide any direct evidence of bad faith to rebut the presumption of good faith arising from SAAC's active litigation.[2]

At oral argument, defense counsel stated that SECURA is not asserting fraudulent joinder as a ground for removal. Nevertheless, the Court will address the issue of fraudulent joinder as the language of SECURA's response to the motion to remand appears to invoke it.[3] The bad faith exception under section 1446 is distinct from the doctrine of fraudulent joinder. *See Aguayo*, 59 F. Supp. 3d at 1264 (discussing the difference); *Housley by & through Hubbard v. Dial Corp.*, No. 4:17-CV-00577-DGK, 2017 WL 3269386, *2–3 (W.D. Mo. Aug. 1, 2017) (discussing fraudulent joinder as distinct from an active litigation analysis). Fraudulent joinder requires that there be no reasonable basis in fact and law supporting a claim. *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003). SECURA argues that the negligence claims against Koziatek related to the 2016 hail storm (Counts I-II) and the contract claims against SECURA related to the July 22, 2019 rain storm (Counts IV-V) are so distinct as to have no *joint* basis in fact or law (Doc. 26 at 1-3). This misstates the fraudulent joinder standard. SECURA does not argue that the claims against Koziatek had no reasonable basis in fact and law *at all*. Indeed, the

---

[2] At oral argument, counsel for SECURA asserted that the naming of Koziatek as a defendant in this action constitutes prima facie evidence of bad faith because the negligence claims against Koziatek related to the 2016 hail storm (Counts I-II) are separate from and irrelevant to the contract claims against SECURA related to the July 22, 2019 rain storm (Counts IV-V), such that the two categories of claims never should have been brought in the same action. The only reason to include the negligence claims, counsel asserted, was to destroy diversity. SECURA provides no legal support for this novel argument, which distorts the bad faith standard.

[3] SECURA waived the ground of fraudulent joinder by not asserting it in the Notice of Removal or a timely amendment. *See Czapla v. Republic Servs., Inc.*, 372 F. Supp. 3d 878, 884

investigation and settlement in this case suggest otherwise. The Court further notes that the state court denied SECURA's motion to dismiss the related negligence claim against SECURA (Count III), and SECURA never attempted to sever the negligence and contract claims (Doc. 1-9).

### IV. Attorney's Fees and Costs

SAAC requests attorney's fees and costs (Doc. 17 at 12). District courts may require removing defendants to pay just costs and actual expenses when remanding a case to state court. 28 U.S.C. § 1447(c). Courts should award fees "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). The *Aguayo* court noted that its bad faith standard, though aligned with the statutory text, would make it "easy … for defendants to concoct a colorable bad-faith argument, remove the case to federal court, and then lose the remand battle without having costs assessed against them." 59 Supp. 3d at 1263. Given the apparent absence of binding Eighth Circuit authority on the scope of the bad faith exception, the Court cannot conclude that SECURA lacked an objectively reasonable basis for seeking removal. *See Bristol*, 2016 WL 6277198 at *5 (citing absence of Eighth Circuit authority in denying request for fees); *Pathfinder Transp., LLC v. Pinnacle Propane, LLC*, 259 F. Supp. 3d 949, 954 (W.D. Ark. 2017) (denying request for fees where neither the Supreme Court nor the Eighth Circuit had directly addressed the remand issue).

SAAC cites *Curators of Univ. of Missouri v. Corizon Health, Inc.*, No. 2:22-CV-4100-NKL, 2022 WL 4117027 (W.D. Mo. Sept. 9, 2022). However, the award in that case turned on

---

(E.D. Mo. 2019) (grounds not stated in a notice of removal or timely amendment are waived).

9

well-settled law as to whether the plaintiff university was an "arm of the state." *Id.* at *7-8.  At oral argument, counsel for SAAC additionally cited *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 F. App'x 888 (11th Cir. 2011).  *Taylor* is not controlling and involved the distinct determination that a removal based on fraudulent joinder was untimely pursuant to 28 U.S.C. § 1446(b).  *Id.* at 893-94.  Therefore, the Court will deny SAAC's request for attorney's fees and costs.  This Order shall not disturb the authority of the Circuit Court of St. Louis County, Missouri to require SECURA to pay costs, fees, expenses, or sanctions arising out of SECURA's conduct in attempting to remove this action to federal court.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand (Doc. 16) is **GRANTED in part** and **DENIED in part** and this action is **REMANDED** to the Circuit Court of St. Louis County, Missouri.

A separate Order of Remand will accompany this Memorandum and Order.

Dated this 27th day of January, 2023.

/s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE